STATE OF NORTH CAROLINA v. ALLEN WYLIN HAUSER

No. 350PA94

(Filed 8 December 1995)

**Searches and Seizures § 14 (NCI4th)— cocaine—search of garbage—basis for search of home**

There was no error in a prosecution for trafficking in cocaine, maintaining a building for the use and sale of controlled substances, and possession of drug paraphernalia where a detective advised a supervisor at the Winston-Salem Sanitation Department that the police department wanted a sanitation worker to collect the trash at defendant's residence and turn it over to the police; the person who normally collected defendant's garbage agreed; defendant's garbage was collected from the back of his residence and taken to the truck; this collection was routine in every way except that defendant's garbage was deposited into a separate container and turned over to the police; a search of the garbage uncovered cocaine residue; the detective applied for a search warrant for defendant's residence, citing the cocaine residue and reliable information from four informants; a warrant was issued; and more than a pound of cocaine was found in defendant's home. While defendant may have retained some expectation of privacy in garbage placed in his backyard out of the public's view so as to bar search and seizure by the police entering the property, a different result is dictated when the garbage is collected in its routine manner. Even assuming that the search violated the Fourth Amendment, the information supplied by the informants

**STATE v. HAUSER**

[342 N.C. 382 (1995)]

provided a substantial basis for probable cause for the search warrant.

**Am Jur 2d, Searches and Seizures §§ 36, 37.**

Justice ORR did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 115 N.C. App. 431, 445 S.E.2d 73 (1994), finding no error and affirming an order denying defendant's motion to suppress entered by Stephens (Donald W.), J., at the 15 March 1993 Criminal Session of Superior Court, Forsyth County. Heard in the Supreme Court 21 June 1995.

*Michael F. Easley, Attorney General, by Daniel C. Oakley, Senior Deputy Attorney General, for the State.*

*Wright, Parrish, Newton & Rabil, by Carl F. Parrish and Nils E. Gerber, for defendant-appellant.*

*North Carolina Association of Police Attorneys, Ronald Hall, President, by Mary Claire McNaught, Public Safety Attorney, amicus curiae.*

*Deborah K. Ross on behalf of American Civil Liberties Union of North Carolina Legal Foundation; and Patterson, Harkavy & Lawrence, by Burton Craige, on behalf of the North Carolina Academy of Trial Lawyers, amici curiae.*

LAKE, Justice.

On 13 July 1992, Detective T.L. Phelps of the Winston-Salem Police Department submitted an application for a warrant to search a single-family dwelling located at 5350 Sunrise Terrace in Winston-Salem, North Carolina. The application noted that the defendant, Allen Wylin Hauser, occupied the residence, and that Detective Phelps had probable cause to believe that illegal drugs and drug paraphernalia would be found in the residence. In support of the application, Detective Phelps stated that he had received reliable information regarding defendant's drug sale operation from four informants, and that he had found cocaine residue in a garbage bag that was obtained from defendant's premises on 10 July 1992. A warrant was issued; and during the ensuing search, more than a pound of cocaine was discovered in the defendant's home.

STATE v. HAUSER

[342 N.C. 382 (1995)]

Several days before the defendant's garbage was obtained, Detective Phelps advised a supervisor at the Winston-Salem Sanitation Department that the police department wanted a sanitation worker to collect the trash at defendant's residence and turn it over to the police. On 10 July 1992, the supervisor introduced Detective Phelps and another detective to Nelson Dowd, who normally collected the trash from 5350 Sunrise Terrace. Detective Phelps told Dowd that he was a police officer and that he was conducting an investigation. Detective Phelps asked Dowd to collect the garbage from 5350 Sunrise Terrace and, if possible, to keep it separate from the garbage collected from other houses and turn it over to him. Dowd agreed to do so in the course of his normal route. Dowd testified that after collecting the garbage from the back of defendant's residence, he took it back to his truck, which was located in the street at the entrance of the defendant's driveway. Dowd further testified that this collection was routine in every way, except that he prevented the defendant's garbage from commingling with other garbage by depositing the defendant's garbage into his own container in the back of the truck instead of into the garbage truck's collection bin. Dowd then drove the truck to the next corner and gave the container holding the defendant's garbage to the detectives. A search of the defendant's garbage uncovered material containing cocaine residue. This evidence was then used as a basis for obtaining the search warrant which ultimately led to the defendant's arrest.

Defendant was indicted on 8 September 1992 for trafficking in cocaine, for maintaining a building for the use and sale of controlled substances and for possession of drug paraphernalia. At a pretrial hearing, the trial court denied the defendant's motion to suppress the evidence obtained from his garbage prior to the issuance of the search warrant and the evidence seized during the subsequent search of his residence. Thereafter, the defendant gave notice of appeal from the trial court's order denying the motion to suppress and entered a plea of guilty as to each charge. The defendant received a sentence of ten years' imprisonment and a $50,000 fine.

On appeal, the defendant argued that the evidence seized from his residence should have been suppressed because the warrant under which it was seized was based on an unconstitutional search and seizure of his garbage. The Court of Appeals found that the warrantless search and seizure of the garbage violated the defendant's Fourth Amendment right to be free from unreasonable searches. However, the Court of Appeals upheld the denial of defendant's motion to sup-

press, finding that the search warrant for defendant's residence was properly supported by credible information even without the evidence of cocaine residue found during the search of defendant's garbage. On 8 September 1994, this Court granted defendant's petition for discretionary review. We conclude that the search of the defendant's garbage did not violate the protections afforded individuals by the Fourth Amendment and therefore affirm, for different reasons, the decision of the Court of Appeals.

In *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30 (1988), the Supreme Court held that the Fourth Amendment does not prohibit a warrantless search and seizure of garbage left for collection outside the curtilage of the home. 486 U.S. at 37, 100 L. Ed. 2d at 34. As in the present case, police officers asked Greenwood's regular garbage collector to collect and turn over Greenwood's garbage. The police then proceeded to search Greenwood's garbage without a warrant. The Supreme Court noted that the warrantless search of Greenwood's garbage by the police would only violate the Fourth Amendment if (1) the defendant manifested a subjective expectation of privacy in the garbage, which (2) society would be willing to accept as objectively reasonable. *Id.* at 39, 100 L. Ed. 2d at 36. The Court held that the defendant, by leaving his garbage at the curb, sufficiently exposed his garbage to the public so as to defeat any reasonable expectation of privacy in the garbage. *Id.* at 40, 100 L. Ed. 2d at 36.

The defendant in the present case seeks to distinguish *Greenwood* based on the fact that his garbage was placed in his backyard, within the curtilage of his home and out of the public's view. The defendant argues that *Greenwood*'s holding is specifically limited to instances in which garbage is placed outside the curtilage of the home. When the garbage is within the curtilage of the home, the defendant contends that the police must have a warrant before conducting a search. We do not agree that *Greenwood*'s scope is so limited. After holding that no Fourth Amendment rights are retained with respect to garbage placed outside the curtilage of the home, the *Greenwood* Court also noted that:

> [Defendant] placed [his] refuse at the curb for the express purpose of *conveying it to a third party, the trash collector, who might himself have sorted through [defendant's] trash or permitted others, such as the police, to do so.* Accordingly, having deposited [his] garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for

the express purpose of having strangers take it," [defendant] could have had no reasonable expectation of privacy in the inculpatory items that [he] discarded.

*Id.* at 40-41, 100 L. Ed. 2d at 37 (emphasis added) (citation omitted). Based upon this language and the cases discussed below, we believe that the better interpretation focuses not only on the location of the garbage but also the extent to which the garbage is exposed to the public or if out of the public's view, whether the garbage was placed for pickup by a collection service and actually picked up by the collection service before being turned over to the police.

For example, in *United States v. Hedrick*, 922 F.2d 396 (7th Cir.), *cert. denied*, 502 U.S. 847, 116 L. Ed. 2d 113 (1991), the defendant sought to suppress items seized by police during a warrantless search of garbage located eighteen to twenty feet within the curtilage of his home. Although within the curtilage of defendant's home, the garbage was placed in view of the public passing by on the sidewalk, the distance between the garbage and the sidewalk was short and there was no fence or other barrier preventing public access to the garbage. Unlike *Greenwood* and the case *sub judice*, the police actually trespassed onto the defendant's property and collected the garbage themselves. The Seventh Circuit Court of Appeals held that the defendant possessed no reasonable expectation of privacy in the garbage and, therefore, the warrantless search by the police did not violate the Fourth Amendment even though the garbage was located within the curtilage of the defendant's home. Citing *Greenwood*, which did not reject any notion of abandonment, the court in *Hedrick* stated, "[t]he obvious distinction between garbage cans and other containers is that it is 'common knowledge' that members of the public often sort through other people's garbage, and that the garbage is eventually removed by garbage collectors on a regular basis." *Hedrick*, 922 F.2d at 399 (citing *Greenwood*, 486 U.S. at 40, 100 L. Ed. 2d at 36). The court in *Hedrick* reasoned that because the garbage was so readily accessible to the public, it was exposed to the public for purposes of the Fourth Amendment. *Id.* at 400. The important implication of *Hedrick* is that a reasonable expectation of privacy is not retained in garbage simply by virtue of its location within the curtilage of a defendant's home. Therefore, the location of defendant Hauser's garbage within the curtilage of his home, in and of itself, does not automatically establish that he possessed a reasonable expectation of privacy in the garbage.

**STATE v. HAUSER**

[342 N.C. 382 (1995)]

Our next inquiry must determine what effect placing his garbage in the rear of his house, out of the public's view, had with respect to the defendant's expectation of privacy. In *Hedrick*, the court indicated that, as a general rule, the reasonableness of the defendant's expectation of privacy will increase as the garbage gets closer to the house. *Id.* In *United States v. Certain Real Property Located at 987 Fisher Road*, 719 F. Supp. 1396, 1404-05 (E.D. Mich. 1989), cited with approval in *Hedrick*, the district court held that garbage bags placed against the back wall of a house, out of the public's view, were protected from warrantless searches. While these facts are similar to those in the instant case, again the location of the garbage within the curtilage alone is not determinative. In *Real Property*, the court based its decision on the fact that the police intentionally trespassed on the defendant's property with the express intent to seize the defendant's trash and search it for evidence of drug activity. *Id.* at 1405. The court specifically stated that its decision stood only for the proposition that "closed garbage bags, while within the curtilage of a backyard, are entitled to fourth amendment protection from police intrusion until they are either taken to the curbside or removed from the premises by the owner or collector." *Id.* at 1406. The court clearly indicated that the law enforcement officers could have had the regular garbage collector deliver the bags to them after they had been removed from the curtilage of the home without any resulting violation of the Fourth Amendment. *Id.* at 1407 n.8.

In *United States v. Biondich*, 652 F.2d 743 (8th Cir.), *cert. denied*, 454 U.S. 975, 70 L. Ed. 2d 395 (1981), a police officer approached an employee of the private garbage collection service that regularly collected trash from the defendant's house. As in the instant case, the officer made arrangements for the collector to pick up the defendant's trash, keep it separate and turn it over to the police. On the regular collection day, the collector picked up the defendant's trash in the usual manner, except that he placed the trash to one side of his collection bin to keep it separate from the garbage collected from other houses. Additionally, the collector did not compact the trash into his truck. The Eighth Circuit Court of Appeals, while recognizing that there may be a legitimate expectation of privacy in garbage while it remains within the curtilage of a residence, stated:

> When a person makes arrangements with a sanitation service to have the items picked up, however, and when the items are placed in the designated place for collection and the regular collector makes the pickup in the usual manner on the scheduled

**STATE v. HAUSER**

[342 N.C. 382 (1995)]

collection day, the person loses his or her legitimate expectation of privacy in the items at the time they are taken off his or her premises.

*Id.* at 745.

Based on *Greenwood, Real Property* and *Biondich,* it is clear that a warrantless search of garbage by police, after pickup by the regular collector in the normal manner, does not violate the Fourth Amendment.

It is apparent that all of these circumstances existed in the present case. Defendant Hauser's garbage was picked up by the regular garbage collector, in the usual manner and on the scheduled collection day. No one other than those authorized by defendant entered defendant's property, and no unusual procedures were followed other than to keep defendant's garbage separate. Only after the garbage was removed from defendant's premises did the police conduct their search. While the defendant may have retained some expectation of privacy in garbage placed in his backyard out of the public's view, so as to bar search and seizure by the police themselves entering his property, a different result is dictated when the garbage is collected in its routine manner. The clear intention to convey the garbage to a third party, so as to allow the trash collector to make such use and disposal of it as he desires, is a factor which merits substantial weight in considering any expectation of privacy. Under these conditions, we are persuaded that the defendant retained no legitimate expectation of privacy in his garbage once it left his yard in the usual manner.

Finally, even assuming, *arguendo,* that the search of defendant's garbage did violate the Fourth Amendment, we agree with the Court of Appeals that the information supplied by the informants, separate and apart from the search of defendant's garbage, provided a substantial basis for probable cause necessary to support the search warrant issued for defendant's residence.

For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice ORR did not participate in the consideration or decision of this case.