STATE OF NORTH CAROLINA v. EDDIE LOYD HOWELL

No. 562A94

(Filed 10 May 1996)

**1. Evidence and Witnesses § 3230 (NCI4th)— capital murder—identification testimony—admissible—credibility for jury**

The trial court did not err in a first-degree murder prosecution by admitting the testimony of a State's witness, Farabee, where Farabee had been in the courtroom when another witness identified defendant from a photographic line-up in which the witness identified photograph number three; Farabee also identified photograph number three, but the photographic lineup shown to Farabee did not include a picture of defendant; and

defendant contended that the mistaken identification was a result of Farabee's copying the previous witness and so seriously undermined her testimony as to make it unreliable and unduly prejudicial. The trial court conducted a hearing on the admissibility of Farabee's testimony and ruled that there were no pretrial identification procedures which were unnecessarily suggestive or conducive to irreparable mistaken identification so as to violate due process and defendant does not contest that ruling. Once such evidence is deemed admissible, the credibility of a witness's identification is a matter for the jury's determination. Here defense counsel fully explored the credibility of the testimony during cross-examination and in closing arguments.

**Am Jur 2d, Witnesses §§ 1029-1033.**

**Admissibility and weight of extrajudicial or pretrial identification where witness was unable or failed to make in-court identification. 29 ALR4th 104.**

2. **Evidence and Witnesses § 365 (NCI4th)— capital murder— similar events—admissible**

The trial court did not err in a first-degree murder prosecution in which the victim was a prostitute by admitting testimony from another prostitute about an encounter with defendant where the victim was last seen near the site where defendant had picked up the witness, Farabee; both women were taken to defendant's bus, where he lived, at night; both were bound by defendant, one with wire, one with duct tape; and defendant inserted a twenty-dollar bill into Farabee's vagina and a shirt into the victim's. These facts are so strikingly similar as to permit Farabee's testimony for the purpose of proving defendant's identity as well as showing a common opportunity, plan, and *modus operandi*, to defendant's attacks. Additionally, the similarity tends to negate defendant's claim that he killed the victim by mistake. The testimony was relevant to a fact or issue other than defendant's character and was properly admitted pursuant to N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Homicide §§ 310-312.**

**Admissibility, under Rule 404(b) of the Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts similar to offense charged to show preparation or plan. 47 ALR Fed. 781.**

STATE v. HOWELL

[343 N.C. 229 (1996)]

3. **Criminal Law § 538 (NCI4th)— capital murder— sequestered witness in courtroom—mistrial denied**

The trial court did not abuse its discretion in a first-degree murder prosecution by denying a mistrial where the trial court had granted defendant's motion to sequester a State's witness, Farabee; defense counsel notified the court during the trial that Farabee had been in the courtroom for over an hour; the prosecutor stated that he did not know Farabee and had not been aware that she was in the courtroom; and she was removed from the courtroom with the prosecutor's full cooperation as soon as her presence was discovered. Although defendant argues that overruling his request for a mistrial was reversible error in view of Farabee's subsequent in-court misidentification of defendant, possibly copying a previous witness, and of the crucial importance of her testimony to the State, there is neither evidence that Farabee heard the previous testimony concerning the identification of defendant nor evidence that her identification was tainted as a result of the previous testimony.

**Am Jur 2d, Trial §§ 245-251.**

**Effect of witness' violation of order of exclusion. 14 ALR3d 16.**

**Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case. 74 ALR4th 705.**

**Exclusion of witnesses under Rule 615 of Federal Rules of Evidence. 48 ALR Fed. 484.**

4. **Searches and Seizures § 25 (NCI4th)— capital murder— search of defendant's former living quarters—ownership— standing**

The trial court did not err in a capital murder prosecution by denying defendant's motion to suppress evidence obtained during a search of a bus in which he had lived where there was substantial competent evidence to support the findings of the court that defendant had said that he was not coming back; defendant had sold the bus in payment of debts; the purchaser resold the bus; the final purchaser allowed the search; and, while there was some evidence that the bus was left as collateral, it was clear that defendant was leaving the state and that the persons to whom he was indebted had authority to sell the bus to satisfy the indebt-

**STATE v. HOWELL**

[343 N.C. 229 (1996)]

edness. The court then concluded that defendant had no standing to object to the search. Conclusions of law that are correct in light of the findings are binding on appeal.

**Am Jur 2d, Evidence § 646.**

**Comment Note.—Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search. 78 ALR2d 246.**

**Interest in property as basis for accused's standing to raise question of constitutionality of search or seizure— Supreme Court cases. 123 L. Ed. 2d 733.**

5. **Criminal Law § 1323 (NCI4th)— capital murder—sentencing—instructions—value of statutory mitigating circumstances**

The trial court erred in a capital sentencing proceeding by instructing the jury to determine whether statutory mitigating circumstances have mitigating value if found to exist. The court instructed the jury on three statutory mitigators, fifty-seven nonstatutory mitigators, and the catchall circumstance; it could not be determined whether jurors found some of the statutory mitigating circumstances to exist but chose to give them no mitigating value.

**Am Jur 2d, Criminal Law §§ 598, 628; Trial §§ 1441-1444.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Surpeme Court cases. 111 L. Ed. 2d 947.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Ferrell, J., at the 6 September 1994 Criminal Session of Superior Court, Burke County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 9 April 1996.

*Michael F. Easley, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, and Valerie B. Spalding, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

STATE v. HOWELL

[343 N.C. 229 (1996)]

WHICHARD, Justice.

Defendant was tried capitally for the first-degree murder of Mary Belle Adams. The jury found him guilty of first-degree murder on the theories of premeditation and deliberation and torture with malice. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death, and the trial court sentenced him accordingly.

The victim was a twenty-nine-year-old black prostitute from Hickory whose body was found burning in a Dumpster in eastern Burke County at approximately 4:00 a.m. on 6 June 1992. The body was burned and charred, and fire had destroyed a considerable portion of it. There was duct tape around the victim's neck and part of her face, including the mouth and nose area. A sock had been stuffed deeply down her throat and a cord tied around her neck. A shirt had been stuffed into the victim's vagina, and there was a one-inch-deep laceration at the back of the vagina caused by a sharp object such as a knife. Hemorrhaging along this wound indicated that the victim's heart was still beating when the wound was inflicted. Dr. John Butts, Chief Medical Examiner for the State, testified that the cause of death was asphyxiation due to ligature strangulation from the cord around the victim's neck.

Defendant, a thirty-four-year-old white male, resided in a converted school bus on the premises of a junkyard in Icard, North Carolina. The junkyard was located approximately nine miles from the Dumpster where the victim was found. The owner, Ralph Maynard, employed defendant as a night watchman in lieu of having defendant pay rent. In June 1992, law enforcement officers began questioning defendant about Adams' murder. Defendant left North Carolina several weeks later. He was subsequently arrested in Needles, California, on 20 July 1992.

The State's evidence connecting defendant to the murder tended to show the following:

Janet Farabee, a black prostitute in Hickory and a longtime friend of the victim's, testified that several months before the murder she had an encounter with a white male whom she believed was defendant. The man picked her up late one evening, and they agreed that he would pay her sixty dollars to have sex with him. The man drove Farabee to a junkyard in Icard. Inside, they proceeded to a bus, entered it, and sat at a table. The lighting was sufficient for her to see

the man, and she identified him as defendant. The man requested that she engage in anal sex with him and shave her pubic area, but she refused. They had oral sex and intercourse, and the man then left for several minutes. When he returned, he tied Farabee's hands with wire and forced her to have anal sex with him. Afterwards, he untied her and told her to get dressed. Farabee asked if the man was going to pay her. The man folded a twenty-dollar bill and forced it into Farabee's vagina, pushing it far inside her. He then returned her to Hickory and threatened to kill her if she said anything about their encounter.

In September 1993, Farabee guided a prosecutor and two law enforcement officers to the junkyard and the bus where she had been assaulted. It was defendant's bus. The officers did not give Farabee any directions or coach her.

Donna Prewitt, a clerk at Enola Grocery in Burke County, testified that on 6 June 1992, a man entered the store and appeared very nervous. He was a white male, approximately thirty-five years old, with a slight beard. The man bought a soda and then left it on the counter. Prewitt called out to him, and he returned for the soda. He then asked if she had heard about a body being found in a Dumpster. The man's hands shook the entire time he was talking. He left the store shortly thereafter. In July, Prewitt was shown a photographic lineup in which she identified a photograph of defendant as depicting the man who had been in the store. She also so identified defendant in court.

David Reeves, an inmate with defendant in the Burke County jail, testified that he asked defendant why he had killed Adams. In response, defendant explained that Adams had tried to rob him. He had smoked crack and fallen asleep, and when he awoke, Adams was going through his pockets. He started beating her, and the next thing he knew she was dead.

Ralph Maynard testified that defendant became nervous after law enforcement officers began questioning him about the murder. Defendant told Maynard he "could not put up with it" and was leaving for Oklahoma to visit his parents. Defendant told David Moore, who worked for Maynard, that if he did not return to North Carolina, Moore could have the bus and its contents. Maynard further testified that shortly after defendant left, Moore received a telephone call from defendant requesting that Moore wire him two hundred dollars in California.

**STATE v. HOWELL**

[343 N.C. 229 (1996)]

Testimony from several FBI forensics experts tended to show that cord discovered in defendant's bus was similar to the cord used to bind the victim. Blood and hair samples found on defendant's sofa matched those of the victim, as did blood found on defendant's bean-bag chair and sofa cushions. A roll of duct tape also was discovered in the bus, although it was not the roll used on the victim.

[1] By his first assignment of error, defendant contends that Farabee's testimony was not credible, that the danger of unfair prejudice substantially outweighed the probative value, and that the trial court erred in admitting it. Defendant's attack on Farabee's credibility is based in part on her in-court identification of defendant. At trial, during an in-court photographic lineup, Prewitt identified photograph number three as defendant's photograph. Farabee was in the court-room during this identification. Thereafter, Farabee also identified the man in photograph number three as defendant. However, as the photographic lineup Farabee was shown did not include a picture of defendant, her selection was incorrect. Defendant argues that Farabee's mistaken identification was a result of her effort to "copy-cat" Prewitt. Because this identification seriously undermined Farabee's credibility, defendant contends her testimony should have been excluded as unreliable and unduly prejudicial under Rule 403 of the North Carolina Rules of Evidence. We disagree.

The trial court conducted a hearing in the absence of the jury on the admissibility of Farabee's testimony. With regard to her identification testimony, it ruled that there were no pretrial identification procedures which were unnecessarily suggestive or conducive to irreparable mistaken identification so as to violate due process and that her in-court identification of defendant was therefore admissible. Defendant does not contest this specific ruling, and we are satisfied from the record that the trial court did not err in allowing Farabee's in-court identification. Once such evidence is deemed admissible, the credibility of a witness' identification is a matter for the jury's determination. *State v. Paige*, 316 N.C. 630, 653, 343 S.E.2d 848, 862 (1986). Defense counsel fully explored the credibility of Farabee's testimony during cross-examination of the witness and in closing arguments. The jury heard the identification testimony, considered the arguments on misidentification, and made its own credibility determination. We conclude that allowing the testimony was not an abuse of the trial court's discretion under Rule 403. *See State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 434-35 (1986).

**[2]** Defendant further contends that Farabee's testimony concerning her encounter with defendant was inadmissible under Rules 403 and 404(b) because the State's purpose in introducing the testimony was to show defendant's criminal propensity and because there were insufficient similarities between her experience and the evidence regarding Adams' murder. Again, we disagree.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). Hence, evidence is admissible under this rule so long as it is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried. *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). The test for determining whether evidence of crimes, wrongs, or acts other than those specifically at issue is admissible is whether the incidents are sufficiently similar and not so remote in time that they are more probative than prejudicial under the Rule 403 balancing test. *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). The similarities between the incidents need not rise to the level of the unique and bizarre but simply must tend to support a reasonable inference that the same person committed both the earlier and the later acts. *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991).

The evidence tended to show that both Farabee and the victim here were black prostitutes in Hickory. The victim was last seen near the site where defendant had picked up Farabee. Both women were taken to defendant's bus at night. Defendant bound both, one with wire, the other with duct tape. Defendant inserted a twenty-dollar bill into Farabee's vagina and a shirt into the victim's. These facts are so strikingly similar as to permit Farabee's testimony for the purpose of proving defendant's identity as well as showing a common opportunity, plan, and *modus operandi* to defendant's attacks. Additionally, the similarity tends to negate defendant's claim that he killed the victim by mistake. We therefore conclude that Farabee's testimony was relevant to a fact or issue other than defendant's character and was properly admitted pursuant to Rule 404(b). Further, the incident with

Farabee was not so remote that it should have been excluded under Rule 403. In light of the obvious relevance of the testimony, the trial court did not abuse its discretion under Rule 403 in admitting it. *Mason*, 315 N.C. at 731, 340 S.E.2d at 434-35.

[3] Defendant next argues that the trial court erred in denying defendant's motion for a mistrial based upon the State's purported violation of the court's order to sequester witness Farabee. Following jury selection, the trial court granted defendant's motion to sequester Farabee. However, immediately after the examination of prosecution witness Prewitt, defense counsel notified the court that Farabee had been in the courtroom for over an hour. Defendant then moved for a mistrial, which the court denied. He argues that in view of Farabee's subsequent in-court misidentification of defendant and of her crucial importance to the State's case, the ruling is reversible error.

Upon defendant's motion for mistrial, the prosecutor stated that he did not know Farabee and had not been aware that she was in the courtroom. She had been told to appear in court and was simply following instructions. As soon as her presence was discovered, she was removed from the courtroom with the prosecutor's full cooperation. There is neither evidence that Farabee heard Prewitt's testimony concerning the identification of defendant nor evidence that her identification was tainted as a result of Prewitt's testimony. The record shows without contradiction that any violation of the sequestration order was unintentional.

Upon a defendant's motion, the trial court must declare a mistrial "if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1988). Whether to grant a mistrial rests in the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of discretion. *State v. Brown*, 315 N.C. 40, 56, 337 S.E.2d 808, 821 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). We cannot hold on this record that the clearly inadvertent violation of the sequestration order so prejudiced defendant as to render the denial of a mistrial an abuse of discretion. This assignment of error is overruled.

[4] By another assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence obtained dur-

ing a search of the bus in which defendant formerly lived. The evidence tended to show that in June 1992, defendant was living in a converted school bus on the junkyard premises of Ralph's Used Cars & Parts in Icard. This business was owned and operated by Ralph Maynard, who had sold the bus to defendant. On 8 July 1992, with Maynard's consent, officers searched the bus. Defendant filed a pretrial motion to suppress the fruits of this search. The trial court conducted a hearing, made findings of fact, and concluded as a matter of law based on these findings that defendant had voluntarily surrendered possession of the bus and authorized its sale in satisfaction of certain indebtedness.

In particular, the trial court made the following relevant findings:

On 7 July [1992], Mr. Maynard told Detective James Pruett that the Defendant had left the state, and said he was not coming back and that the police would have to shoot him.

According to Mr. Maynard, the Defendant sold the bus to David Moore, an employee at the junkyard, and Mr. Maynard subsequently purchased it from Mr. Moore.

With respect to $600 the Defendant owed Mr. Moore, Mr. Moore said that the Defendant told him, "When I leave you can have the bus and contents," and Mr. Moore subsequently sold the bus to Mr. Maynard for $400.

On 8 July 1992, Detective Pruett spoke to Mr. Maynard and learned that the Defendant had owed money to Mr. Maynard and Mr. Moore, and had left the bus "to be sold for an indebtedness owed by the defendant."

There was some evidence tending to show that the bus was left as collateral, but, nonetheless, "it was clear from the evidence that the defendant was leaving the state of North Carolina and that the persons to whom he was indebted had authority from him to sell the bus . . . to satisfy any such indebtedness."

In light of these findings, the trial court concluded that defendant had no standing to object to the search; therefore, his Fourth Amendment search and seizure rights had not been violated, and the evidence resulting from the search was admissible. Defendant concedes that if he agreed to sell the bus to David Moore before 8 July 1992, he lacks standing to challenge the search. He argues, however, that the record does not support the findings that he in fact sold the bus to Moore

before 8 July and that therefore the conclusion of law that he had ceased to possess the bus is erroneous.

When supported by competent evidence, the trial court's findings of fact following a suppression hearing are conclusive and binding on appellate courts. *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994). Having reviewed the evidence and the findings, we conclude that substantial competent evidence supports the findings. Conclusions of law that are correct in light of the findings are also binding on appeal. *State v. Mahaley*, 332 N.C. 583, 593, 423 S.E.2d 58, 64 (1992), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 649 (1995). The trial court's conclusions that defendant had ceased to possess the bus and therefore lacked standing to contest the search are correct as a matter of law. *See State v. Hauser*, 342 N.C. 382, 464 S.E.2d 443 (1995); *State v. Mlo*, 335 N.C. 353, 377-79, 440 S.E.2d 98, 110-11, *cert. denied*, —— U.S.——, 129 L. Ed. 2d 841 (1994). This assignment of error is therefore overruled.

For the foregoing reasons, we conclude that the guilt-phase of defendant's trial was free of prejudicial error.

**[5]** Defendant contends that the trial court erred in the sentencing phase by instructing the jury to determine whether statutory mitigating circumstances have mitigating value if found to exist. We agree.

The court instructed the jury to consider three statutory mitigators, fifty-seven nonstatutory mitigators, and the catchall circumstance. In response to a juror's question about the meaning of mitigation and the procedure for determining whether a proffered mitigating circumstance exists, the trial court thrice instructed the jury to decide whether any of the sixty-one mitigating circumstances had mitigating value. Specifically, it instructed:

> What you are instructed to do is consider the series of them, that is one right after another each of these questions, and decide whether one or more of you find that that mitigating factor listed is deemed by one or more of you to have mitigating value. And if one or more of you deems that that's so, then you answer it.

Shortly thereafter, it further instructed:

> The question is— The question is for you to say, if you deem [the circumstance] to have mitigating value.

>  . . . .

. . . Then—If one of you does, then you would indicate so by saying "yes." If all of you do not as to any one of the 61 enumerated circumstances for your consideration as to each one of them, then you would answer "no" as to that one.

In *State v. Jaynes*, 342 N.C. 249, 284-86, 464 S.E.2d 448, 469-70 (1995), we concluded that the trial court committed reversible error in giving a jury instruction substantively identical to the one given here. That decision clearly controls. As in *Jaynes*, the instruction told jurors they could give no weight to statutory mitigating circumstances they found to exist. This is contrary to the intent of N.C.G.S. § 15A-2000(f) and is an incorrect statement of the law. *State v. Fullwood*, 329 N.C. 233, 238, 404 S.E.2d 842, 845 (1991); *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988). Because we cannot determine whether jurors found some of the statutory mitigating circumstances to exist but chose to give them no mitigating value, we cannot conclude that the error was harmless. *Jaynes*, 342 N.C. at 286, 464 S.E.2d at 470.

Accordingly, we vacate defendant's sentence of death and remand to the Superior Court, Burke County, for a new capital sentencing proceeding.

GUILT PHASE: NO ERROR.

SENTENCING PHASE: NEW CAPITAL SENTENCING PROCEEDING.