STATE OF NORTH CAROLINA v. BRIAN WENDALL RHODES

No. COA01-621

(Filed 2 July 2002)

**1. Search and Seizure— trash can—warrantless search apart from collection**

The trial court erred by denying defendant's motion to suppress marijuana seized without a warrant from his trash can where the contents were not placed there for collection in the usual and routine manner and the trash can was within the curtilage of defendant's home. Defendant maintained an objectively reasonable expectation of privacy.

**2. Search and Seizure; Confessions and Incriminating Statements— drug dog alerting–defendant's statement**

The trial court did not err in a marijuana prosecution by admitting defendant's statements and evidence that a drug dog alerted to the dresser in defendant's bedroom (in which no marijuana was found) where an informant signaled that he had completed a transaction involving marijuana left in defendant's trash can, officers seized the marijuana, knocked on defendant's door, and told defendant that they knew about the transaction, defendant invited them in, confessed, and told officers that they could search his house, and the drug dog was brought in. Defendant consented to the search and voluntarily confessed.

**3. Evidence— other offenses—details of conviction**

The trial court did not abuse its discretion in a marijuana prosecution by excluding the details of an informant's prior conviction for assault on a female after evidence of the conviction was allowed.

**4. Search and Seizure— improper search of trash can—no prejudicial error**

There was no prejudicial error in the denial of a motion to suppress marijuana seized in an improper search of a trash can where there was overwhelming evidence of defendant's guilt.

Appeal by defendant from judgment entered 14 December 2000 by Judge Henry E. Frye, Jr., in Rockingham County Superior Court. Heard in the Court of Appeals 15 April 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Melissa L. Trippe, for the State.*

*C. Orville Light, for defendant-appellant.*

EAGLES, Chief Judge.

On 12 June 2000, defendant was indicted for possession with intent to manufacture, sell, and deliver marijuana and felony possession of marijuana. On 15 August 2000, defendant filed a motion to suppress evidence. After a hearing on 13 September 2000, the Honorable Peter M. McHugh denied defendant's motion. On 14 December 2000, a jury found defendant guilty of possession with intent to manufacture, sell, and deliver marijuana and felony possession of marijuana. The Honorable Henry E. Frye, Jr., sentenced defendant to a term of six to eight months incarceration for possession of marijuana and a consecutive sentence of six to eight months for possession with intent to manufacture, sell, and deliver marijuana. Defendant appeals.

At the suppression hearing, the evidence tended to show that on 13 January 2000, Ricky Lee Shelton was working as a paid informant for the Rockingham County Sheriff's Department. At approximately 4:30 p.m., Shelton called Detective F. K. Woods of the Rockingham County Sheriff's Department. Shelton informed Detective Woods about a possible drug transaction involving defendant. At approximately 6:00 p.m., Shelton met Detective Woods at Woods' office. From the office, Shelton paged defendant numerous times. Defendant called Shelton's cell phone. Detective Woods listened in on the conversation between defendant and Shelton. Defendant told Shelton that the marijuana would be in a detergent box inside the trash can outside defendant's home. Defendant instructed Shelton to take the marijuana from the trash can and in payment leave $1,150 in cash. After hearing this conversation, Detective Woods "got together with some other officers, and [the officers] set up a little plan."

During cross examination of Detective Woods at the suppression hearing, defense counsel established that "the plan" did not include procuring a search warrant:

Q: And do you have the capability within the detective's division to prepare a search warrant?

A: Yes, sir.

Q:  Okay. And would it be fair to say that you have those on computer?

A:  I have a format on computer. Yes.

Q:  Basically, you would just type in the information and print it out?

A:  Yes, sir.

Q:  Now, the magistrate's office, obviously, is less than a block away?

A:  Correct.

Q:  And the magistrate is usually on duty 24 hours a day?

A:  Yes.

Q:  But you didn't attempt to get a search warrant on that occasion, did you?

A:  Due to Mr. Shelton telling me he was on his way, there was no time for a search warrant.

Q:  But you knew you were arranging this deal as early as four-thirty.

A:  I spoke about the deal. I had not heard the conversation until early that afternoon, and it would not give me any time to do a search warrant before the deal.

Q:  How long would it take you to type in some information for a search warrant?

A:  I'm not a good typer. It takes me awhile.

Q:  The rest of your fellow officers are not good typers, also?

A:  No, sir.

Q:  And you basically have a format that basically you would just put in your probable cause; is that right?

A:  Yes, sir.

Q:  And put in the name and address; is that right?

A:  Yes, sir.

Q: And basically everything else in there is already formatted; is that right?

A: We have to list the defendant and his house several times in the search warrant. I mean, it's full of pages that you have to go through. It's not as easy as it seems.

Q: How long do you think it would take you to prepare a search warrant?

A: Me personally? To type it up and get it signed, probably about 40 to 50 minutes.

Q: And, of course, there was no timeframe given over the telephone about any kind of deal, was there?

A: Mr. Shelton said he was on his way, and he knew where Mr. Shelton lived.

Q: And it doesn't take 40 to 50 minutes to get from where Mr. Shelton lives to where Mr. Rhodes lives, and you didn't immediately run out the door. You took some time to set up the operation?

A: Yes, sir, around five to 10 minutes.

After formulating the "take down" plan and deciding not to procure the warrant, Detective Woods and other officers followed Shelton to defendant's house. At the suppression hearing, Detective Woods' testified about what occurred once Shelton and the officers arrived at defendant's residence:

A: [Shelton] pulled up to the residence where Mr. Rhodes lives. It was a matter of fifteen seconds. [Shelton] went to the trash can. The trash can lid came up. The flash light came on, and [Shelton] flashed about four times, and myself and other officers moved in. Mr. Shelton, at that time left the area. I went to the trash can, opened the lid and confirmed it was marijuana by the smelled [sic] and sealed it up in my truck.

Q: Did you ever not see Mr. Shelton from the time he arrived there to Mr. Rhodes' house when he drove up to the time he left?

A: That's correct, never lost eye contact with him.

Q: Where was the trash can located in reference to Mr. Rhodes' house?

A: It was on the side of the house. You pull up in his driveway, the side door is here to your right and the trash can is sitting right there at the right there at the side of the door.

Q: How far does the house sit off the roadway?

A: Fifty feet maybe.

Q: And once you saw the flashlight flash about four times, you said you went onto the property?

A: I went onto the property. Like I said, I confirmed it was marijuana in the trash can, and then I took it out of the trash can and locked it up in my truck.

After hearing testimony from Detective Woods and argument from both the prosecutor and defense counsel, Judge HcHugh denied defendant's motion to suppress the marijuana.

At trial, the evidence tended to show that after Detective Woods seized the marijuana from the trash can and secured it in his truck, Detective Woods and Deputy Fowler went to defendant's door and knocked. When defendant opened the door, Detective Woods explained to defendant that he had overheard the phone conversation between defendant and Shelton. Defendant invited the two officers into the kitchen. Detective Woods then "let [defendant] again know what [was] found in the trash can." Detective Woods then advised defendant of his *Miranda* rights. According to Detective Woods' testimony, defendant, after being advised of his *Miranda* rights,

> stated this to the reporting officer, that he put the marijuana in the trash can and that it was all he had and there was no more marijuana at the residence or in his vehicle. The suspect stated "Y'all can search the house." Then he stated that the reason he had the marijuana [was because] he was trying to do a guy a favor.

After being told by defendant that the officers could search the house, the officers did so. A trained drug dog indicated that there was a controlled substance in defendant's bedroom dresser. Despite the dog's indication, no controlled substance was discovered. From the officers' search of the house, no evidence was seized.

On appeal, defendant contends that the trial court erred by: (1) denying defendant's motion to suppress evidence seized without a search warrant at defendant's home; (2) admitting out of court state-

ments made by defendant; (3) admitting evidence of the indication by the drug dog on the dresser in defendant's house; and (4) restricting defense counsel's cross examination of the State's witness, Ricky Lee Shelton.

I.

**[1]** Defendant first assigns error to the trial court's denial of defendant's pre-trial motion to suppress the marijuana that was seized by Detective Woods. Without a warrant, Detective Woods seized marijuana from the outside trash can located beside the steps that led to the side-entry door to defendant's house.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See also* N.C. Const. Art. I, § 19. "Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' for the Constitution requires that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police . . . ." *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967) (citations omitted). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id. See also State v. Williams*, 299 N.C. 529, 531, 263 S.E.2d 571, 572 (1980).

In *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30 (1988), the United States Supreme Court identified one such exception. The Court held that police were not required to obtain a warrant before searching the contents of garbage bags left for regular curbside collection. The Court's decision in *Greenwood* turned on whether respondents "manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *Id.* at 39, 100 L. Ed. 2d at 36. In its analysis, the Court noted that "plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* at 40, 100 L. Ed. 2d at 36-37. The Court concluded "that society would not accept as reasonable respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public." *Id.* at 41, 100 L. Ed. 2d at 37.

In *State v. Hauser*, 342 N.C. 382, 464 S.E.2d 443 (1995), the North Carolina Supreme Court considered whether the Fourth Amendment

prohibited the warrantless search and seizure of garbage, left within the curtilage of defendant's home, after it had been collected by the garbage collector and subsequently given to the police. In its analysis of the issue, the *Hauser* Court noted that "a reasonable expectation of privacy is not retained in garbage simply by virtue of its location within the curtilage of a defendant's home." *Id.* at 386, 464 S.E.2d at 446. In reaching its conclusion, the *Hauser* Court focused on three factors in determining whether defendant possessed a reasonable expectation of privacy in his garbage: (1) the location of the garbage; (2) the extent to which the garbage was exposed to the public or out of the public's view; and (3) "whether the garbage was placed for pickup by a collection service and actually picked up by the collection service before being turned over to the police." *Id.* After considering these factors, the *Hauser* Court held that "the defendant retained no legitimate expectation of privacy in his garbage once it left his yard *in the usual manner*" and that accordingly, defendant was not entitled to the protection afforded by the Fourth Amendment. *Id.* at 388, 464 S.E.2d at 447 (emphasis added).

"The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." *United States v. Dunn*, 480 U.S. 294, 300, 94 L. Ed. 2d 326, 334 (1987). "[T]he curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' and therefore has been considered part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 80 L. Ed. 2d 214, 225 (1984) (citation omitted). In North Carolina, "curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings." *State v. Frizzelle*, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955).

While prevailing case law makes clear that trash is not entitled to Fourth Amendment protection when it (1) has been left for collection *in the usual manner* and (2) has been collected *in the usual manner*, no court has held that police may enter upon a private citizen's property without a warrant and search through that citizen's trash can. To the contrary, the law of North Carolina provides "that the constitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards, or other lands not an immediate part of the dwelling site."

*State v. Harrison*, 239 N.C. 659, 662, 80 S.E.2d 481, 484 (1954). Accordingly, our resolution of whether the warrantless search of defendant's trash can and the seizure of the marijuana discovered there turns on whether the trash can was within the curtilage of defendant's home and whether defendant manifested an expectation of privacy in the contents of his trash can that society would objectively accept as reasonable.

The facts here are markedly different from those seen in *Greenwood* and *Hauser*. In both *Greenwood* and *Hauser*, without a warrant, police obtained garbage from a sanitation worker after the sanitation worker collected the garbage in the usual manner from the usual location. In *Greenwood* and *Hauser* the respondents in both cases left their garbage for routine pickup. Accordingly, no reasonable expectation of privacy was retained in the respondents' respective garbage. Here, on the evening of the warrantless search of defendant's trash can, the trash can was situated immediately beside the steps that led to the side-entry door of defendant's house. The trash can was approximately fifty feet from the road and was viewable from the road. Unlike the situations in *Greenwood* and *Hauser*, the police in this case did not obtain the contents of defendant's trash can from a sanitation worker who had obtained the trash "in the usual manner." Here, the police trespassed on defendant's property and searched defendant's trash can after informant Ricky Lee Shelton indicated to police, by flashing a flashlight, that marijuana was present in the trash can.

On these facts, we conclude that defendant's trash can was within the curtilage of defendant's residence. In addition, because the trash can was within the curtilage of defendant's home and because the contents of the trash can were not placed there for collection in the usual and routine manner, defendant maintained an objectively reasonable expectation of privacy in the contents of his trash can. *Cf. Hauser*, 342 N.C. at 388, 464 S.E.2d at 447 (no legitimate expectation of privacy in garbage when it left respondent's yard in the usual manner). Accordingly, we hold that Detective Woods violated defendant's Fourth Amendment protections when he, without a search warrant, invaded the curtilage of defendant's residence, searched defendant's trash can, and seized the marijuana discovered therein. The trial court erred by denying defendant's motion to suppress the marijuana.

II.

**[2]** Defendant next contends that the trial court erred by (1) admitting out of court statements made by defendant and (2) admitting evidence of the indication by the drug dog on the dresser in defendant's house. Defendant argues that both the out of court statements and the indication by the drug dog resulted from Detective Woods' warrantless search of defendant's trash can and therefore was tainted as the fruit of the poisonous tree. We disagree.

After Detective Woods secured the marijuana in his truck, Detective Woods and Deputy Fowler knocked on defendant's door. When defendant answered, Detective Woods explained to defendant that the officers were investigating drug activity and that the officers knew about the drug transaction between defendant and Shelton. Detective Woods also told defendant that the marijuana in the trash can had been discovered and seized. Defendant then invited the officers into his home. After Detective Woods informed defendant of his *Miranda* rights, defendant confessed to putting the marijuana in the trash can and stated that "he was trying to do a guy a favor." Defendant then told the officers that he had no other drugs and that the officers could search his house. During the search, a drug dog indicated that he smelled a controlled substance in a dresser. Upon further search of the dresser, no controlled substance was discovered.

Here, the State's evidence, even excluding the evidence relating to the warrantless search and seizure, shows that the police officers had probable cause to believe that defendant was engaged in criminal activity. Acting on this probable cause, Detective Woods and Deputy Fowler knocked on the door of defendant's residence in order to discuss with defendant the events that had just transpired. In the course of the officer's discussion with defendant, defendant told the officers that they could search his residence and defendant voluntarily confessed to his participation in the drug transaction after having been read his *Miranda* rights. "Consent . . . has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997). In addition, "the objective of *Miranda* is to protect against coerced confessions, not to suppress voluntary confessions, which 'are essential to society's compelling interest in finding, convicting, and punishing those who violate the law.' " *State v. Buchanan*, 353 N.C. 332, 342, 543 S.E.2d 823,

829 (2001) (citation omitted). Based on these well established principles, we hold that defendant's contentions that the trial court erred by admitting evidence of the drug dog's indication and evidence of statements made by defendant are without merit. Defendant consented to, indeed invited, the search of his home and voluntarily confessed to his involvement in the drug transaction. Accordingly, these assignments of error fail.

## III.

**[3]** As his last assignment of error, defendant contends that the trial court erred by restricting the cross examination of paid informant Ricky Lee Shelton. At trial, the court allowed as evidence the fact that Shelton had been previously convicted of assault on a female. On appeal, defendant argues that the trial court erred by excluding evidence detailing the specifics of that assault conviction.

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter." N.C. R. Evid. 609(a). Rule 608(b) of the North Carolina Rules of Evidence provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Here, the trial court properly allowed evidence of Shelton's prior conviction. In its discretion, however, the trial court excluded the details of Shelton's conviction. Our review of the record reveals that the trial court's exclusion of the details relating to Shelton's conviction was proper and consistent with our rules of evidence. Accordingly, this assignment of error fails.

## IV.

**[4]** Finally, we revisit the warrantless search of defendant's trash can and the seizure of the marijuana in order to consider whether the trial

court's erroneous denial of defendant's motion to suppress and subsequent admittance of the marijuana evidence at trial was prejudicial error. N.C.G.S. § 15A-1443(b) provides: "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless."

After careful review of the record and in light of our other holdings in this opinion, we conclude that the State presented overwhelming evidence of defendant's guilt. Detective Woods overheard the telephone conversation between defendant and confidential paid informant Ricky Lee Shelton during which the drug transaction was organized. Detective Woods watched Shelton as he opened defendant's trash can and signaled to the officers by flashing a flashlight approximately four times thereby indicating the presence of marijuana. Finally, defendant confessed to the investigating officers that defendant had put the marijuana in the trash can and that defendant "was trying to do a guy a favor." "Overwhelming evidence of [a] defendant's guilt of the crimes charged may . . . render a constitutional error harmless." *State v. Autry*, 321 N.C. 392, 403, 364 S.E.2d 341, 348 (1988). In light of this principle and the evidence presented in this case, we hold that while Detective Woods' warrantless search and seizure violated defendant's constitutional protections, the overwhelming evidence of defendant's guilt rendered harmless beyond a reasonable doubt the trial court's denial of defendant's motion to suppress the marijuana.

Accordingly, we hold that defendant's conviction was free from prejudicial error.

No prejudicial error.

Judges HUDSON and BRYANT concur.