STATE OF NORTH CAROLINA v. BLAKE J. REED, Defendant

No. COA06-400

(Filed 6 March 2007)

**Search and Seizure— cigarette butt—thrown down on patio— within curtilage—reasonable expectation of privacy**

> The trial court erred by denying defendant's motion to suppress a cigarette butt containing DNA evidence where officers obtained the butt after defendant asked for time to consider giving a DNA sample, continued the interview on his apartment patio, threw the butt toward a trash pile on the patio, and an officer kicked it into a common area for later retrieval. Defendant had a reasonable expectation of privacy in his home, the patio was part of his home, one cannot abandon property within the curtilage of one's own home, and the only time the cigarette left defendant's property was through the officer's actions.

Appeal by defendant from judgment entered 31 May 2005 by Judge David Cayer in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 November 2006.

> *Attorney General Roy Cooper, by Assistant Attorney General Tina A. Krasner, for the State.*

> *Daniel J. Clifton, for defendant-appellant.*

ELMORE, Judge.

Blake J. Reed (defendant) appeals an order of the trial court, entered 31 May 2005, denying his motion to suppress DNA-related evidence. Because we find that the trial court erred in its denial of the motion, we reverse the trial court's order and grant defendant a new trial.

On 10 March 2003, defendant was indicted for first-degree burglary, second-degree sexual offense, and common law robbery. On 15

August 2005, a jury found defendant guilty of first-degree burglary and second-degree sexual offense, and not guilty of common law robbery. In connection with the investigation of the alleged crimes, police officers obtained a cigarette butt with defendant's DNA on it. This DNA evidence was admitted over defendant's motion to suppress in an order entered 31 May 2005. It is from this order that defendant now appeals.

On 28 January 2003, two detectives from the Charlotte-Mecklenburg Police Department arrived at defendant's apartment to follow up with defendant, whom they had met on 23 January 2003 as part of their investigation. The detectives requested that defendant provide a DNA sample. He initially stated that he was willing to provide one, but then reconsidered, requesting 24 hours to decide.

During this conversation, a young woman entered the apartment and the detectives requested that the interview continue in a more private setting. Defendant led the detectives to a small patio in the back of the apartment. Defendant lit a cigarette, smoked it, and put it out. He then took apart the butt, removing the filter's wrapper and shredding the filter before placing the remains in his pocket. As he did so, defendant mentioned watching the popular network television police procedural, *CSI: Crime Scene Investigation.*

The conversation continued, and defendant lit another cigarette. After he finished this cigarette, he flicked the butt at a pile of trash located in the corner of the concrete patio. The butt struck the pile of trash and rolled between defendant and one of the detectives, who kicked the butt off of the patio into the grassy common area. The conversation ended and the detective, who had kept his eye on the still-burning cigarette butt, retrieved the butt after his partner and defendant turned to go back inside the apartment.

After testing, the State presented evidence that the DNA sample taken from the cigarette butt matched that taken from a stain found on the alleged victim's shirt. At trial, defendant moved to suppress this evidence on the grounds that it was the fruit of an unconstitutional search and seizure. The trial court denied defendant's motion, and defendant subsequently was convicted. Defendant now appeals the order denying his motion to suppress.

Defendant's sole argument on appeal is that the cigarette butt containing the DNA evidence was seized on the basis of a warrantless, non-consensual search of an area in which defendant had a rea-

sonable expectation of privacy. Because we find that defendant did have a reasonable expectation of privacy on his patio, we hold that the search and seizure carried out by the Charlotte-Mecklenburg Police was unconstitutional and that the trial court therefore erred in denying defendant's motion to suppress.

Defendant relies extensively on *State v. Rhodes*, 151 N.C. App. 208, 565 S.E.2d 266 (2002), *disc. review denied*, 356 N.C. 173, 569 S.E.2d 273 (2002). In *Rhodes*, this Court addressed a case in which "[w]ithout a warrant, [police] seized marijuana from [an] outside trash can located beside the steps that led to the side-entry door to [the] defendant's house." *Rhodes*, 151 N.C. App. at 213, 565 S.E.2d at 269. After noting that both the United States and North Carolina Constitutions protect citizens from unreasonable searches and seizures, *see* U.S. Const. amend. IV; N.C. Const. Art. I, § 20, we quoted the Supreme Court of the United States for the proposition that " '[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Rhodes*, 151 N.C. App. at 213, 565 S.E.2d at 269 (quoting *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967)).

One such exception, outlined by the United States Supreme Court in *California v. Greenwood*, allowed police to conduct a warrantless search of garbage "left for regular curbside collection." 486 U.S. 35, 39, 100 L. Ed. 2d 30, 36 (1988). The Supreme Court reasoned that society would not accept as "objectively reasonable" any claimed "subjective expectation of privacy in [the defendant's] garbage" where the garbage was "readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* at 39-40, 100 L. Ed. 2d at 36-37.

Likewise, when our own state Supreme Court addressed a similar issue, it held that "a reasonable expectation of privacy is not retained in garbage simply by virtue of its location within the curtilage of a defendant's home." *State v. Hauser*, 342 N.C. 382, 386, 464 S.E.2d 443, 446 (1995). The State latches on to this assertion and seeks to rely on it. However, it ignores our Supreme Court's extended discussion in that case. In fact, the Supreme Court based its conclusion on the fact that "[the] garbage was picked up by the regular garbage collector, in the usual manner and on the scheduled collection day. No one other than those authorized by defendant entered defendant's property, and no unusual procedures were followed other than to keep defendant's

garbage separate." *Id.* at 388, 464 S.E.2d at 447. Indeed, the *Hauser* court explicitly noted that "the defendant may have retained some expectation of privacy in garbage placed in his backyard out of the public's view, so as to bar search and seizure by the police themselves entering his property." *Id.*

In its brief, the State also purports to apply the three factors relied on by our Supreme Court in *Hauser*. This, too, is unpersuasive. The State enumerates the factors as follows: "(1) the location of the garbage; (2) the extent to which the garbage was exposed to the public or out of the public's view; and (3) 'whether the garbage was placed for pickup by a collection service and actually picked up by the collection service before being turned over to police.' " *See Hauser*, 342 N.C. at 386, 464 S.E.2d at 446.

In addressing the first factor, the State makes much of the fact that defendant did not actually place his cigarette butt into the garbage, but rather threw it in the general direction of the pile. However, the State stops short of claiming that defendant threw the cigarette off of his property. Indeed, the State concedes that "[t]he officer noticed the butt rolling toward him and kicked it toward the grassy area." It is apparent that the only time the cigarette ever left defendant's property was through the officer's actions.

The State goes on to address the second factor, claiming: "[T]he patio area was shared by four tenants, including defendant. The patio is surrounded by a large common grassy area that adjoins a parking lot." The State then asserts, without further discussion, that "[b]ased on these factors, defendant could not have retained a legitimate expectation of privacy in the cigarette butt." At the outset, we note that the fact that an area is shared with co-tenants is insufficient to remove a defendant's expectation of privacy. *See, e.g., Georgia v. Randolph*, —— U.S. ——, ——, 164 L. Ed. 2d 208, 221 (2006) (stating that if a houseguest has an expectation of privacy, "it presumably should follow that an inhabitant of shared premises may claim at least as much, and it turns out that the co-inhabitant naturally has an even stronger claim."). Further, although it is true that the patio abuts a common area, there is no doubt that the patio itself was part of defendant's home. Moreover, absent the detective's care in noting the butt's specific location, there is no reason to believe that anyone would be able, or have reason, to distinguish this cigarette butt from the many others in the grassy area.

Finally, the State failed even to address the third factor that it identified from the *Hauser* decision. It is clear that at no time was the cigarette butt placed for pickup by a collection service, nor was it ever actually collected by such a service. To the contrary, the uncontroverted evidence is that tenants were responsible for bringing their own trash to dumpsters provided by the apartment complex. The cigarette butt was removed directly by the detective, who was acting in his role as a police officer.

Even more importantly, this Court recently held in *Rhodes* that "because the trash can was within the curtilage of [the] defendant's home and because the contents of the trash can were not placed there for collection in the usual and routine manner, [the] defendant maintained an objectively reasonable expectation of privacy in the contents of his trash can." *Rhodes*, 151 N.C. App. at 215, 565 S.E.2d at 271. The same analysis should apply in the present case.

"In North Carolina, 'curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings.' " *Id.* at 214, 565 S.E.2d at 270 (quoting *State v. Frizzelle*, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955)). Here, the patio was directly connected to defendant's apartment and covered from the apartment above by a tarp. This is clearly within the curtilage of defendant's home.

The fact that the cigarette butt was removed from the curtilage when one of the detectives kicked the butt off of the patio fails to defeat defendant's reasonable expectation of privacy. Additionally, the furtive nature of the seizure raises a suspicion that the detective was aware that defendant would not consent to his taking the butt and that the detective knew that a seizure of the butt would be illegal so long as it was on the patio. It is possible that had defendant placed the cigarette butt in the common area, he may have lost his reasonable expectation of privacy; the police may not, however, by removing evidence from the curtilage, proceed as if the evidence had been left open to the public by defendant.

The State attempts to distinguish *Rhodes*, essentially claiming that by flicking the cigarette butt, defendant discarded it and therefore lost his reasonable expectation of privacy.[1] We find this argument unpersuasive. If a defendant has a reasonable expectation of

---

1. The State erroneously asserts that defendant discarded the butt "in a common area." The evidence is clear, however, that the patio was attached to the apartment and for the sole use of the apartment's tenants.

privacy in refuse placed in a garbage can and set outside the home, as in *Rhodes*, a defendant should be equally secure throwing a cigarette butt in a trash pile immediately behind his home. The fact that the State echoes the trial court's language, referring to the cigarette butt as "littered," does not change the underlying analysis.

In short, the State's attempts to distinguish *Rhodes* are unpersuasive. The State fails even to meet the factors it set out for itself to succeed under *Hauser*. Therefore, we apply *Rhodes* and hold that defendant had a reasonable expectation of privacy, that the search and seizure thus violated defendant's constitutional rights, and that the trial court erred in denying defendant's motion to suppress.

Though the State touches on it only briefly in its arguments, we note that the trial court relied on the abandoned property exception to defendant's Fourth Amendment protections. Because we believe that the facts of the present case fall well outside this exception, we decline to apply it in this case.

It is true that this Court has stated that "[t]he protection of the Fourth Amendment does not extend to abandoned property." *State v. Cromartie*, 55 N.C. App. 221, 225, 284 S.E.2d 728, 730 (1981). While this continues to be the rule in North Carolina, we cannot agree that the cigarette butt in this case was abandoned. We note that the trial court in *Cromartie* stated that "defendant could not have had any reasonable, legitimate expectation of privacy regarding the possession of said item after he discarded the same *on a public street*." *Id*. at 223, 284 S.E.2d 728, 730 (emphasis added). Moreover, in the *Cromartie* decision, this Court relied, at least in part, on a Minnesota decision in which that state's supreme court stated, "Where . . . the discard *occurs in a public place* . . . the property will be deemed abandoned for purposes of search and seizure." *Id*. at 224, 284 S.E.2d 728, 730 (quoting *City of St. Paul v. Vaughn*, 306 Minn. 337, 346-47, 237 N.W. 2d 365, 370-71 (1975)) (emphasis added). We therefore believe that for abandonment to occur, the discarding of property must occur in a public place; one simply cannot abandon property within the curtilage of one's own home.

Defendant had a reasonable expectation of privacy in his home. The search and seizure as conducted by the police therefore violated defendant's constitutional rights, and the trial court's denial of defendant's motion to suppress was in error. Accordingly, we reverse the trial court's order and grant defendant a new trial.

New trial.

Judges HUNTER and McCULLOUGH concur.