STATE v. PASOUR

[223 N.C. App. 175 (2012)]

STATE OF NORTH CAROLINA v. CARL STEVEN PASOUR

No. COA12-190

(Filed 16 October 2012)

**Search and Seizure—curtilage of house—reasonable expectation of privacy—marijuana plants**

The trial court erred by denying defendant's motion to suppress marijuana plants seized from his backyard in a prosecution for possession of marijuana and for maintaining a dwelling for the possession of controlled substances. The determinative issue was whether the homeowner had a reasonable expectation of privacy in the area of curtilage the officers entered when they first viewed the contraband material. There was no indication that the plants were visible from the front of the house or from the road; all visitor traffic appeared to be kept to the front door and traffic to the rear was discouraged by a posted sign; an officer who heard a noise was not able to identify when in time he heard it, what the noise sounded like, where it came from, or even if it sounded like a person moving around; and the trial court found only that the officers went to the back of the house as "standard procedure" "to observe anyone leaving the house" and for officer safety.

Appeal by Defendant from judgment entered 16 November 2011 by Judge F. Donald Bridges in Gaston County Superior Court. Heard in the Court of Appeals 23 May 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*J. Edward Yeager, Jr., for Defendant.*

BEASLEY, Judge.

Carl Steven Pasour (Defendant) appeals from the trial court's denial of his motion to suppress evidence and dismiss the charges against him. For the following reasons, we reverse.

On 15 August 2010, the Gaston County Police Department received a call that a subject living at 248 Loray Farm Road had marijuana plants growing with his tomato plants at the residence. Three officers went to that address and knocked on the residence's front and side doors but received no response. Two of the officers pro-

ceeded to the back of the residence while one stayed at the front door to see if anyone would come to the door. In the backyard, the officers discovered various plants, including marijuana plants. The plants were seized and wrapped in an emergency blanket for transportation to police headquarters for processing. Defendant was arrested that same day for possession of more than one and one-half ounces of marijuana. On 3 January 2011, Defendant was indicted for that offense and the additional offense of maintaining a dwelling for keeping and/or selling a controlled substance.

On 14 July 2011, Defendant filed a motion to suppress all evidence seized from his home and property, and further to dismiss all charges against him. On 21 September 2011, Defendant's motion was denied by the trial court. On 15 November 2011, Defendant thereafter pled guilty pursuant to the *Alford* decision to both charges. Defendant was sentenced to six to eight months imprisonment which was suspended. Defendant was placed on supervised probation for thirty months. Defendant gave notice of appeal in open court.

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress the evidence seized in the warrantless search of his property. We agree.

"The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *State v. Rhodes*, 151 N.C. App. 208, 213, 565 S.E.2d 266, 269 (2002) (internal quotation marks omitted). " '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967)). One such exception is the plain view doctrine, under which a seizure is lawful "when the officer was in a place where he had a right to be when the evidence was discovered and when it is immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are subject to seizure based upon probable cause." *State v. Mickey*, 347 N.C. 508, 516, 495 S.E.2d 669, 674 (1998) (citations omitted).

Defendant argues that the officers were not in a place that they had the right to be when they went to his backyard. This Court has held that "[e]ntrance onto private property for the purpose of a general inquiry or interview is proper[,]" and as such "officers are enti-

**STATE v. PASOUR**

[223 N.C. App. 175 (2012)]

tled to go to a door to inquire about a matter; they are not trespassers under these circumstances." *State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 600-01 (1979) (citations omitted). Defendant acknowledges this well-settled law, but argues that there was no justification for the officers to go into his backyard after receiving no answer to their repeated knocks at his front and side doors. We agree.

We first note that Defendant fails to challenge any of the trial court's findings of fact.

> Where an appellant fails to assign error to the trial court's findings of fact, the findings are presumed to be correct. Our review, therefore, is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment.

*Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591-92, 525 S.E.2d 481, 484 (2000) (internal quotations and citations omitted). Here, the trial court concluded as a matter of law that when one of the officers, Officer Bolick, noticed the marijuana plants, they were in plain view and as such the seizure of the marijuana plants was "not unlawful or unconstitutional or prohibited by North Carolina law." This conclusion is not supported by the trial court's factual findings. To support its conclusion, the trial court found that Officer Bolick noticed "what was immediately apparent to him" as marijuana plants behind the residence, when he "had not yet walked around the back left corner of the residence." However, in order for the plain view exception to apply, "the officer [must] be lawfully located in a place from which the object can be plainly seen," and thus may "not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136-37, 110 L. Ed. 2d 112 (1990). This finding does not support an assertion that Officer Bolick was in a place he was permitted to be when he saw the plants, regardless of whether it was the back corner, the back yard or the side yard.

Although this issue has not been directly addressed by this Court or our state Supreme Court, it has been considered by the federal appeals court in this jurisdiction and those cases are instructive here. In *Alvarez v. Montgomery County*, 147 F.3d 354, 356 (4th Cir. 1998), the Fourth Circuit held that "[t]he Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there[.]" In reaching this holding, the Fourth Circuit noted that other

circuits have found that an officer's warrantless entry into a backyard is not necessarily a violation of the Fourth Amendment. *See id.* at 358. However, the Fourth Circuit later clarified that where officers have no reason to believe that entering a homeowner's backyard will produce a different result than knocking on the home's front door, the Fourth Amendment is violated. *Pena v. Porter*, 316 Fed. Appx. 303, 314 (4th Cir. 2009).

In *Pena*, the officers approached Pena's trailer to "knock and talk", and when Pena did not answer at the front door, they went further onto Pena's property to knock at a back door. *Id.* The Fourth Circuit held that the officers had no reason to expect that a knock at the back door would be heard by an occupant when there was no response at the front door, especially given that the officers had not witnessed anyone enter the trailer, there were no lights on inside to indicate anyone was home, there was no sign directing people to the rear of the trailer, nor where there any noises coming from the rear of the trailer to indicate the presence of someone back there. *Id.* Based on the foregoing, the Fourth Circuit concluded that "[t]he officers' conduct in this case violated the Fourth Amendment." *Id.*

In carefully examining this precedent, our own precedent, and case law from around the country, we find that the determinative issue is whether or not the homeowner had a reasonable expectation of privacy in the area of curtilage the officers entered when they first viewed the contraband material. *See, e.g., State v. Rhodes*, 151 N.C. App. 208, 214, 565 S.E.2d 266, 270 (2002) (finding the determinative issue to be whether the defendant manifested a reasonable expectation of privacy in his garbage); *United States v. Garcia*, 997 F.2d 1273 (9th Cir. 1993) (finding a backyard is not protected where there is no reasonable expectation of privacy because the back of the house is used as the principal entrance of the dwelling); *Hobson v. United States*, 226 F.2d 890 (8th Cir. 1955) (finding police violated the Fourth Amendment rights of a homeowner when they went to her home without an arrest warrant for a narcotics violation and one officer positioned himself in the backyard while the others went to the front door). "In North Carolina, 'curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings.'" *Rhodes*, 151 N.C. App. at 214, 565 S.E.2d at 270 (2002) (quoting *State v. Frizelle*, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955)). Further, while not dispositive, a homeowner's intent to keep others out and thus evidence of his or her expectation of privacy in an area may be demon-

strated by the presence of "no trespassing" signs. *See, e.g., Edens v. Kennedy*, 112 Fed. Appx. 870 (4th Cir. 2004) (noting that the presence of "no trespass" signs may be one factor in the consideration of whether a homeowner has a reasonable expectation of privacy or not in a particular area).

Here, the officers were within the curtilage of the home when they viewed the plants, regardless of whether they were in the back or side yards. *See Rhodes*, 151 N.C. App. at 214, 565 S.E.2d at 270 (2002). There is no indication from the record that the plants were visible from the front or from the road. The trial court found that there was a "no trespassing" sign that was "plainly visible" on the side of the residence where the officers walked. Even though the officers claim they did not see the sign, such a sign is evidence of the homeowner's intent that the side and back of the home were not open to the public. Unlike in *Garcia*, there is no evidence here to suggest that there was a path of any kind or anything else to suggest a visitor's use of the rear door; instead, all visitor traffic appeared to be kept to the front door and traffic to the rear was discouraged as a result of the posted sign. *See Garcia*, 997 F.2d at 1279–80.

Further, similar to the circumstances in *Pena*, there is no evidence in the record that suggests that the officers had reason to believe that knocking at Defendant's back door would produce a response after knocking multiple times at his front and side doors had not. At the suppression hearing, the officers' testified that they went into Defendant's backyard as part of "standard procedure" to see if anyone was in the backyard or in the residence. The State argues that one of the police officers heard a sound within the dwelling, and as such, it was reasonable to believe that there was someone home who was simply unaware of the officers' presence, and so the officers were justified in entering the backyard. The officers admit that they never saw anyone come out of the house, nor did they hear noises coming from the *back* of the house. It is also unclear from the hearing transcript as to whether the officers started around back before or after they became aware that the officer knocking at the door had even heard a noise, as one testified that they started back after the initial knock and the other testified they started back after their fellow officer heard a noise. The officer that heard the noise was not able to identify when in time he heard it, what the noise sounded like, where it came from, or even if it sounded like a person moving around. Furthermore, the trial court made no finding of fact on this point; instead it only found that the officers went around back

as was "standard procedure" "to observe anyone leaving the house" and for officer safety. Neither this finding nor the underlying facts is sufficient to support the officers' movement toward the back of the house.

Given the circumstances of this case, there was no justification for the officers to enter Defendant's backyard and so their actions were violative of the Fourth Amendment. Accordingly, we reverse the trial court's denial of Defendant's motion to suppress.

Reversed.

Judges HUNTER, Robert C. and GEER concur.