IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-904

 Filed: 18 April 2017

Guilford County, No. 15CRS080457

STATE OF NORTH CAROLINA

 v.

MICHAEL VERNON HUDDY

 Appeal by defendant from judgment entered 8 June 2016 by Judge L. Todd

Burke in Guilford County Superior Court. Heard in the Court of Appeals 22 February

2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Martin T.
 McCracken, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron
 Thomas Johnson, for defendant.

 DIETZ, Judge.

 Defendant Michael Vernon Huddy appeals the trial court’s denial of his motion

to suppress evidence obtained after a law enforcement officer searched the curtilage

of Huddy’s home without a warrant. The officer saw a vehicle with its doors open at

the back of a 150-yard driveway leading to Huddy’s home. Concerned that the vehicle

may be part of a break-in or home invasion, the officer drove down Huddy’s 150-yard

driveway, ran the tags on the vehicle, checked the front door (but did not knock),

checked the home’s windows, “cleared” the sides of the house, and then went through
 STATE V. HUDDY

 Opinion of the Court

a gate in a chain-link fence enclosing the home’s backyard and approached the storm

door at the back of the house, not visible from the street—all without a warrant or

probable cause and accompanying exigent circumstances. As the officer approached

the back door, he smelled marijuana, which ultimately led to Huddy’s arrest and

conviction for possession of marijuana.

 We hold that the officer’s conduct violated the Fourth Amendment and thus

Huddy’s motion to suppress should have been granted. At the suppression hearing,

the State relied on two exceptions to the warrant requirement to justify the officer’s

search of the curtilage of Huddy’s home: the “knock and talk” doctrine and the

“community caretaker” doctrine. As explained below, neither exception applies here.

First, the State cannot rely on the knock and talk doctrine because the officer did

more than merely knock and talk. The officer ran a license plate not visible from the

street, walked around the house examining windows and searching for signs of a

break-in, and went first to the front door (without knocking) and then to a rear door

not visible from the street and located behind a closed gate. These actions went

beyond what the U.S. Supreme Court has held are the permissible actions during a

knock and talk. Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013).

 Likewise, the State cannot rely on the community caretaker doctrine. The

presence of a vehicle in one’s driveway with its doors open is not the sort of emergency

that justifies the community caretaker exception. State v. Smathers, 232 N.C. App.

 -2-
 STATE V. HUDDY

 Opinion of the Court

120, 126, 753 S.E.2d 380, 384 (2014). Accordingly, the trial court erred by denying

Huddy’s motion to suppress. We reverse the trial court’s order and remand for further

proceedings.

 Facts and Procedural History

 On 16 July 2016, around 11:00 a.m., Deputy Tracy Smith of the Guilford

County Sherriff’s Department was patrolling an area that law enforcement believed

was at risk of home invasions or break-ins. Deputy Smith approached Huddy’s home

and saw a parked vehicle with open doors at the end of a 150-yard driveway leading

to the rear of the home. Deputy Smith thought it was unusual for a vehicle to be

parked in a driveway with the doors open at that time of day. Deputy Smith also

observed that the house was surrounded by trees, which Deputy Smith believed made

it susceptible to break-ins.

 Deputy Smith drove to the back of the driveway, parked behind the vehicle,

and ran the vehicle’s license plate. The address on record for the vehicle did not match

the address for Huddy’s home. Deputy Smith continued to investigate by walking to

the front of the house and checking windows and doors for signs of forced entry.

Deputy Smith saw that the front door was “covered in cobwebs” and did not appear

to be used as the main entrance to the house. Deputy Smith did not knock on the

front door. Observing no signs of forced entry, Deputy Smith then “cleared” the sides

of the home before walking to the back of the house.

 -3-
 STATE V. HUDDY

 Opinion of the Court

 The back yard of Huddy’s home was enclosed by a chain-link fence. Deputy

Smith opened the gate in that chain-link fence and entered the enclosed back yard.

Deputy Smith then approached a storm door on the rear porch, which was not visible

from the street. Deputy Smith smelled marijuana in the area around the storm door.

 Deputy Smith knocked on the door and Huddy answered. Deputy Smith asked

Huddy to verify that he was lawfully present in the house. Huddy first offered his

driver’s license, which matched the address for the vehicle in the driveway, but not

the house. Deputy Smith requested additional verification, and Huddy eventually

produced a rental agreement for the house.

 Based on the odor of marijuana, Deputy Smith secured a warrant to search the

house. Law enforcement later seized a large quantity of marijuana. The State

indicted Huddy on 14 September 2015 for possession of marijuana with intent to sell

or deliver, possession of marijuana, and possession of marijuana paraphernalia. On

16 February 2016, Huddy moved to suppress the evidence of marijuana seized from

the residence. On 4 April 2016, the trial court entered a written order denying the

motion.

 On 16 May 2016, Huddy entered an Alford plea to one count of possession of

marijuana with intent to sell or deliver while reserving his right to appeal the denial

of his motion to suppress. The court sentenced Huddy to a 4 to 14 month active

 -4-
 STATE V. HUDDY

 Opinion of the Court

sentence, suspended the sentence, and ordered 12 months of supervised probation.

Huddy timely appealed.

 Analysis

 Huddy challenges the denial of his motion to suppress. He contends that the

investigating officer violated the Fourth Amendment when he searched throughout

the curtilage of Huddy’s home to “check the windows, check the doors” for signs of a

possible break-in. As explained below, we agree that neither the knock and talk

doctrine nor the community caretaker doctrine permitted the officer to conduct this

type of warrantless search of the home’s curtilage. Accordingly, we reverse the trial

court’s order and remand for further proceedings.

 “The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.” State v. Biber, 365 N.C. 162, 167–

68, 712 S.E.2d 874, 878 (2011). Unchallenged findings of fact “are deemed to be

supported by competent evidence and are binding on appeal.” Id. at 168, 712 S.E.2d

at 878. “Conclusions of law are reviewed de novo and are subject to full review.” Id.

 We start by reviewing the Fourth Amendment’s core principles. “[W]hen it

comes to the Fourth Amendment, the home is first among equals. At the

Amendment’s very core stands the right of a man to retreat into his own home and

there be free from unreasonable governmental intrusion.” Florida v. Jardines, 133 S.

 -5-
 STATE V. HUDDY

 Opinion of the Court

Ct. 1409, 1414 (2013). This protection extends not only to the interior of one’s home,

but also to the “curtilage,” which is “the area immediately surrounding and associated

with the home.” Id. As a result, law enforcement ordinarily cannot enter the curtilage

of one’s home without either a warrant or probable cause and the presence of exigent

circumstances that justify the warrantless intrusion. Id.

 Courts have recognized several exceptions to this general rule, and the trial

court relied on two of these exceptions: the “knock and talk” doctrine and the

“community caretaker” doctrine. We address these two exceptions in turn below.

 I. Knock and Talk Doctrine

 We begin with the knock and talk doctrine. Because “no search of the curtilage

occurs when an officer is in a place where the public is allowed to be, such as at the

front door of a house,” officers are permitted to approach the front door of a home,

knock, and engage in consensual conversation with the occupants. State v. Lupek, 214

N.C. App. 146, 151, 712 S.E.2d 915, 919 (2011). Put another way, law enforcement

may do what occupants of a home implicitly permit anyone to do, which is “approach

the home by the front path, knock promptly, wait briefly to be received, and then

(absent invitation to linger longer) leave.” Jardines, 133 S. Ct. at 1415.

 Importantly, law enforcement may not use a knock and talk as a pretext to

search the home’s curtilage. Id. at 1416. “[N]o one is impliedly invited to enter the

protected premises of the home in order to do nothing but conduct a search.” Id. at

 -6-
 STATE V. HUDDY

 Opinion of the Court

n.4. Likewise, the knock and talk doctrine does not permit law enforcement to

approach any exterior door to a home. An officer’s implied right to knock and talk

extends only to the entrance of the home that a “reasonably respectful citizen”

unfamiliar with the home would believe is the appropriate door at which to knock.

Id. at 1415 n.2. This limitation is necessary to prevent the knock and talk doctrine

from swallowing the core Fourth Amendment protection of a home’s curtilage.

Without this limitation, law enforcement freely could wander around one’s home

searching for exterior doors and, in the process, search any area of a home’s curtilage

without a warrant.

 Under Jardines, the officer in this case did not conduct a permissible knock

and talk. The court found—and the record supports—that the officer searched

throughout the home’s curtilage before going to the back door to knock. Indeed, the

officer conceded during the suppression hearing that he was searching for signs of a

break-in before he knocked on any door to the home:

 Q. You stated that you guess that the driveway was
 approximately 150 yards, but you didn’t measure it.

 A. No.

 Q. And based on your experience, when you’re looking at a
 residence such as this, what are the signs for a burglary?

 A. Forced entry on the doors, doors unlocked, doors—you
 can always shimmy a door to make entry on the back door,
 side door, just by moving a credit card or sliding something

 -7-
 STATE V. HUDDY

 Opinion of the Court

 in the doorjamb. I’m looking for any kind of signs of forced
 entry, opened doors, unlocked doors, things of that nature.

 Q. Based on your experience, what would cause you to
 approach a residence like this in the first place?

 A. My primarily [sic] duty there was, once I saw the vehicle
 in the driveway, doors were open on it, there was no other
 cars there. The house—at least to my—all my years, it’s
 typically a type of house that’s surrounded by woods. The
 vehicle was—there’s no other vehicle in the driveway. The
 doors are open on the vehicle. The tag comes back to a
 residence other than that residence, which is—okay, that’s
 things I might need to know. I get out, walk around to the
 front, check the windows, check the doors, don’t see any
 indicators. Since the back is, to me, there’s a primary
 entrance, that’s also where the vehicle was parked, that’s
 probably my point that I may be close—paying close
 attention to. So I went around to the other side, cleared the
 other side and came around to the back of the residence.

 Q. And is walking around the entire residence like that, is
 that normal procedure?

 A. Yes, ma’am.

(Emphasis added.)

 Simply put, the officer, by his own admission, did more than simply knock and

talk. The officer ran a license plate on a car whose license plate was not visible from

the street, checked windows for signs of a break-in, and walked around the entire

residence to “clear” the sides of the home before approaching the back door. Under

Jardines, this is precisely the sort of search of a residence that falls outside the knock

and talk doctrine. As the Court explained in Jardines, “the background social norms

 -8-
 STATE V. HUDDY

 Opinion of the Court

that invite a visitor to the front door do not invite him there to conduct a search.” 133

S. Ct. at 1416. Accordingly, we hold that the trial court erred by relying on the knock

and talk doctrine to justify the officer’s warrantless search of the curtilage of Huddy’s

home.

II. Community Caretaker Doctrine

 We next turn to the community caretaker doctrine. Our State first recognized

the community caretaker doctrine in State v. Smathers, 232 N.C. App. 120, 126, 753

S.E.2d 380, 384 (2014). The origin of the doctrine “is the desire to give police officers

the flexibility to help citizens in need or protect the public even if the prerequisite

suspicion of criminal activity which would otherwise be necessary for a constitutional

intrusion is nonexistent.” Smathers, at 125, 753 S.E.2d at 384. In applying the

doctrine, courts must assess whether “the public need or interest outweighs the

intrusion upon the privacy of the individual.” Id. at 129, 753 S.E.2d at 386. Factors

that courts should consider include “(1) the degree of the public interest and the

exigency of the situation; (2) the attendant circumstances surrounding the seizure,

including time, location, the degree of overt authority and force displayed; (3) whether

an automobile is involved; and (4) the availability, feasibility and effectiveness of

alternatives to the type of intrusion actually accomplished.” Id.

 Notably, our State’s appellate courts have never applied the community

caretaker doctrine to a search of a home. As explained above, the Fourth

 -9-
 STATE V. HUDDY

 Opinion of the Court

Amendment’s protections are at their very strongest within one’s home, and thus the

public need must be particularly strong to justify a warrantless search of a home

under the community caretaker exception.

 We hold that the facts in this case do not justify that warrantless intrusion. At

the time the officer searched the curtilage of the home, the only indication that there

was an emergency was a vehicle in the home’s driveway with its doors open. Although

this might suggest a home invasion is in progress, there are countless innocent

reasons why one might leave doors open in a vehicle parked in a driveway—for

example, to make it easier to grab the rest of the groceries or other items the

homeowner is in the process of bringing into the home. Thus, this situation is unlike

one in which the facts point unquestionably to some public emergency, such as a door

that has been broken open, or signs that someone inside the home needs emergency

medical attention.

 Moreover, there were other available alternatives to the search that the officer

could have used, such as knocking at the front door and calling out to ask if anyone

needed assistance, or waiting at the entrance to the driveway to observe the vehicle.

Applying the objective “totality of the circumstances” test established in Smathers,

we hold that the trial court’s findings in this case are insufficient to justify a search

of the curtilage of Huddy’s home under the community caretaker exception.

 - 10 -
 STATE V. HUDDY

 Opinion of the Court

 In sum, the officer’s warrantless search of the curtilage of the home was not

justified by either the knock and talk doctrine or the community caretaker doctrine.

Accordingly, the trial court should have granted Huddy’s motion to suppress. See

State v. Pope, 333 N.C. 106, 113–14, 423 S.E.2d 740, 744 (1992). We reverse the trial

court’s order and remand for further proceedings.

 Conclusion

 For the foregoing reasons, we reverse the trial court’s order and remand for

further proceedings.

 REVERSED AND REMANDED.

 Judge ELMORE concurs.

 Judge TYSON concurs with separate opinion.

 - 11 -
 No. COA16-904 – State v. Huddy

 TYSON, Judge, concurring.

 I fully concur in this Court’s opinion. I write separately to further address the

State’s argument and the trial court’s conclusion that Deputy Smith’s actions were

lawful under the “knock and talk” exception to the requirement for a warrant. The

trial court relied upon the fact that Huddy’s front door “was covered in cobwebs and

did not appear to [be] in use or the primary door to the residence” to justify Deputy

Smith’s decision to walk around the sides of the house and enter a gated fence to the

backyard to look for a different door.

 An officer conducting a knock and talk cannot ignore an unobstructed,

accessible front door simply because it has cobwebs and does not appear to be used

as regularly as the homeowner’s customary entrance to the home. Like Huddy’s,

many homes have driveways, entrances, or garages on the back or sides of the house.

The home’s occupants, family, or frequent invitees may use a closer side or back door

or a door within a garage to enter the home, rather than walk further to use a front

door.

 Nonetheless, even a seldom-used front door is the door uninvited members of

the public are expected to use when they arrive. See State v. Jardines, 133 S. Ct. 1409,

1415, 185 L. Ed. 2d 495, 502 (2013) (holding there is an implicit license, which

“typically permits the visitor to approach the home by the front path, knock promptly,

wait briefly to be received, and then (absent an invitation to linger longer) leave.”).

Were law enforcement officers always allowed to proceed directly to the door they
 STATE V. HUDDY

 TYSON, J., concurring

subjectively believed to be the homeowner’s customary entrance, the officers’

warrantless intrusion into the home’s curtilage could potentially exceed the limited

“implied license” discussed by the Supreme Court of the United States in Jardines.

 Although the implied license to approach a person’s home traditionally

contemplates a knock at the front door, this Court and others have recognized

instances where officers might be justified in approaching an alternate door in

appropriate circumstances. See State v. Gentile, 237 N.C. App. 304, 309-10, 766

S.E.2d 349, 353 (2014); State v. Pasour, 223 N.C. App. 175, 178, 741 S.E.2d 323, 325

(2012); Alvarez v. Montgomery Cty., 147 F.3d 354, 358-59 (4th Cir. 1998); Pena v.

Porter, 316 Fed.Appx. 303, 313-14 (4th Cir. 2009) (unpublished). In this case, the

State relies upon Alvarez to argue law enforcement officers may enter a person’s

backyard, without a warrant, when the officers assert a legitimate law enforcement

purpose to do so.

 In Alvarez, the officers received a complaint about an underage drinking party

underway at a home in a nearby neighborhood. Alvarez, 147 F.3d at 356. The officers

arrived and approached the home with the intent to simply “notify the homeowner or

the party’s host about the complaint and to ask that no one drive while intoxicated.”

Id. at 358. When the officers reached the front porch, they noticed a sign on the door,

which read “Party In Back” and displayed an arrow pointing guests toward the

backyard. Id. at 357. Without knocking on the front door first, the officers proceeded

 -2-
 STATE V. HUDDY

 TYSON, J., concurring

to the backyard and asked to speak to the hosts of the party. Id. Upon discovering

underage drinking, Alvarez was issued a citation for furnishing an alcoholic beverage

to a person under the age of twenty-one. Alvarez challenged the officers’ actions as

an unreasonable search. Id. at 358.

 The Court of Appeals emphasized that “the textual touchstone of the Fourth

Amendment is reasonableness.” Id. at 358 (citation and quotation marks omitted).

Under these circumstances, the court held the officers’ entry into the backyard,

without knocking on the front door first, satisfied this reasonableness requirement.

Id. at 358-59. The court noted:

 Though we conclude the officers’ conduct comported with
 the Fourth Amendment, we reiterate that the area within
 the curtilage of the home typically is afforded the most
 stringent Fourth Amendment protection. It was not
 unreasonable, however, for officers responding to a 911 call
 to enter the backyard when circumstances indicated they
 might find the homeowner there.

Id. at 359 (emphasis supplied).

 However, this Court has further concluded, “where officers have no reason to

believe that entering a homeowner’s curtilage will produce a different response than

knocking on the residence’s front door, the Fourth Amendment is violated.” Gentile,

237 N.C. App. at 309, 766 S.E.2d at 353; see Pasour, 223 N.C. App. at 178, 741 S.E.2d

at 325 (citing Pena, 316 Fed.Appx. at 314). In Gentile, the officers proceeded to the

back of the house after they knocked on the front door and received no response. Id.

 -3-
 STATE V. HUDDY

 TYSON, J., concurring

at 309-10, 766 S.E.2d at 353. While the officers’ testified they only proceeded to the

back of the house because they believed the occupant may not have heard their knock

due to the barking dogs nearby, this Court held the officers’ actions violated the

Fourth Amendment and noted:

 [t]here was no evidence of any vehicles on the property,
 persons present, lights illuminated in the residence, or
 furniture in the house, and the detectives believed that no
 one resided there. Accordingly, the sound of barking dogs,
 alone, was not sufficient to support the detectives’ decision
 to enter the curtilage of defendant’s property by walking
 into the back yard of the home and the area on the
 driveway within ten feet of the garage.

Id. at 310, 766 S.E.2d at 353 (citing Jardines, 133 S. Ct. at 415, 185 L. Ed. 2d at 502).

 Unlike in Alvarez, where a sign posted on the front door invited and directed

visitors to the backyard, nothing indicated Deputy Smith would find Huddy or others

in the backyard. Deputy Smith never saw anyone come out of the house, nor did he

hear any noises coming from the house or backyard, nor detect any other suspicious

activity. While Deputy Smith testified he believed the front door was unused because

it had cobwebs hanging from the door but was otherwise “nice and clean,” no evidence

indicates he had reason to believe entering Huddy’s gated and fenced backyard to

knock on the back door would “produce a different result than knocking on the home’s

front door[.]” Pasour, 223 N.C. App. at 178, 741 S.E.2d at 325; see Gentile, 237 N.C.

App. 310, 766 S.E.2d at 353.

 -4-
 STATE V. HUDDY

 TYSON, J., concurring

 Even if the back door was the entrance primarily used by Huddy or regular

visitors, an uninvited visitor would not necessarily acquire any “implied license” to

also use that door. In cases where other jurisdictions have permitted an officer to

knock at a back or side door, the door was easily visible to the public and not within

any defined curtilage or fenced enclosure. See, e.g., United States v. Shuck, 713 F.3d

563, 565 (10th Cir. 2013) (holding the officers reasonably approached the back door

when a chain-link fence enclosed the front door, but not the back door); United States

v. James, 40 F.3d 850, 862 (7th Cir. 1994), vacated on other grounds, 516 U.S. 1022,

133 L. Ed. 2d 515 (1995), and modified, 79 F.3d 553 (7th Cir. 1996) (“The passage to

the rear side door was not impeded by a gate or fence. Both the paved walkway and

the rear side door were accessible to the general public and the rear side door was

commonly used for entering the duplex from the nearby alley.”).

 No gate or fence blocked access to Huddy’s front door, but his back door was

located within a gated and fenced-in backyard. After crossing the yard, the back door

could only be accessed by further opening a storm door and walking across a small

porch. While the front door in this case may have been covered in cobwebs or not

frequently used, a “reasonably respectful citizen” would not have taken this fact as

an “implied license” to go to the back areas of the house, open the closed fence gate,

cross the fenced backyard, open the storm door, and walk across the porch, just to

knock upon the back door. See Jardines, 133 S. Ct. at 1415, 185 L. Ed. 2d at 502.

 -5-
 STATE V. HUDDY

 TYSON, J., concurring

However, the record demonstrates Deputy Smith followed this exact process to knock

on Huddy’s back door.

 Deputy Smith’s actions far exceeded the scope of any implied license to conduct

a knock and talk at Huddy’s home without a warrant. See Pasour, 223 N.C. App. at

178, 741 S.E.2d at 325 (“[w]here officers have no reason to believe that entering a

homeowner’s backyard will produce a different result than knocking on the home’s

front door, the Fourth Amendment is violated.”).

 Under de novo review, Deputy Smith’s conduct, after failing to knock upon the

front door of Huddy’s home and with the absence of anything other than a car

registered to another address parked with an open door in the driveway, cannot be

justified as a “knock and talk” to excuse the requirement of a warrant. The trial

court’s conclusions of law 3, 4, 5, 7, and 8 to deny the motion to suppress are not

supported by the evidence presented or the order’s findings of fact. Huddy’s motion

to suppress should have been allowed under these facts. This Court properly rules

error occurred in the denial of Defendant’s motion to suppress.

 -6-