TYSON, Judge, concurring.
*155 I fully concur in this Court's opinion. I write separately to further address the State's argument and the trial court's conclusion that Deputy Smith's actions were lawful under the "knock and talk" exception to the requirement for a warrant. The trial court relied upon the fact that Huddy's front door "was covered in cobwebs and did not appear to [be] in use or the primary door to the residence" to justify Deputy Smith's decision to walk around the sides of the house and enter a gated fence to the backyard to look for a different door.
An officer conducting a knock and talk cannot ignore an unobstructed, accessible front door simply because it has cobwebs and does not appear to be used as regularly as the homeowner's customary entrance to the home. Like Huddy's, many homes have driveways, entrances, or garages on the back or sides of the house. The home's occupants, family, or frequent invitees may use a closer side or back door or a door within a garage to enter the home, rather than walk further to use a front door.
Nonetheless, even a seldom-used front door is the door uninvited members of the public are expected to use when they arrive. See State v. Jardines , 569 U.S. 1, ----, 133 S.Ct. 1409, 1415, 185 L.Ed.2d 495, 502 (2013) (holding there is an implicit license, which "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent an invitation to linger longer) leave."). Were law enforcement officers always allowed to proceed directly to the door they subjectively believed to be the homeowner's customary entrance, the officers' warrantless intrusion into the home's curtilage could potentially exceed the limited "implied license" discussed by the Supreme Court of the United States in Jardines .
Although the implied license to approach a person's home traditionally contemplates a knock at the front door, this Court and others have recognized instances where officers might be justified in approaching an alternate door in appropriate circumstances. See State v. Gentile , 237 N.C.App. 304, 309-10, 766 S.E.2d 349, 353 (2014) ; State v. Pasour , 223 N.C.App. 175, 178, 741 S.E.2d 323, 325 (2012) ; Alvarez v. Montgomery Cty. , 147 F.3d 354, 358-59 (4th Cir. 1998) ;
*156 Pena v. Porter , 316 Fed.Appx. 303, 313-14 (4th Cir. 2009) (unpublished). In this case, the State relies upon Alvarez to argue law enforcement officers may enter a person's backyard, without a warrant, when the officers assert a legitimate law enforcement purpose to do so.
In Alvarez , the officers received a complaint about an underage drinking party underway at a home in a nearby neighborhood. Alvarez , 147 F.3d at 356. The officers arrived and approached the home with the intent to simply "notify the homeowner or the party's host about the complaint and to ask that no one drive while intoxicated." Id . at 358. When *657 the officers reached the front porch, they noticed a sign on the door, which read "Party In Back" and displayed an arrow pointing guests toward the backyard. Id . at 357. Without knocking on the front door first, the officers proceeded to the backyard and asked to speak to the hosts of the party. Id . Upon discovering underage drinking, Alvarez was issued a citation for furnishing an alcoholic beverage to a person under the age of twenty-one. Alvarez challenged the officers' actions as an unreasonable search. Id . at 358.
The Court of Appeals emphasized that "the textual touchstone of the Fourth Amendment is reasonableness." Id . at 358 (citation and quotation marks omitted). Under these circumstances, the court held the officers' entry into the backyard, without knocking on the front door first, satisfied this reasonableness requirement. Id . at 358-59. The court noted:
Though we conclude the officers' conduct comported with the Fourth Amendment, we reiterate that the area within the curtilage of the home typically is afforded the most stringent Fourth Amendment protection. It was not unreasonable, however, for officers responding to a 911 call to enter the backyard when circumstances indicated they might find the homeowner there .
Id . at 359 (emphasis supplied).
However, this Court has further concluded, "where officers have no reason to believe that entering a homeowner's curtilage will produce a different response than knocking on the residence's front door, the Fourth Amendment is violated." Gentile , 237 N.C.App. at 309, 766 S.E.2d at 353 ; see Pasour , 223 N.C.App. at 178, 741 S.E.2d at 325 (citing Pena , 316 Fed.Appx. at 314 ). In Gentile , the officers proceeded to the back of the house after they knocked on the front door and received no response. Id . at 309-10, 766 S.E.2d at 353. While the officers' testified they only proceeded to the back of the house because they believed the occupant may *157 not have heard their knock due to the barking dogs nearby, this Court held the officers' actions violated the Fourth Amendment and noted:
[t]here was no evidence of any vehicles on the property, persons present, lights illuminated in the residence, or furniture in the house, and the detectives believed that no one resided there. Accordingly, the sound of barking dogs, alone, was not sufficient to support the detectives' decision to enter the curtilage of defendant's property by walking into the back yard of the home and the area on the driveway within ten feet of the garage.
Id. at 310, 766 S.E.2d at 353 (citing Jardines , 569 U.S. at ----, 133 S.Ct. at 1415, 185 L.Ed.2d at 502 ).
Unlike in Alvarez , where a sign posted on the front door invited and directed visitors to the backyard, nothing indicated Deputy Smith would find Huddy or others in the backyard. Deputy Smith never saw anyone come out of the house, nor did he hear any noises coming from the house or backyard, nor detect any other suspicious activity. While Deputy Smith testified he believed the front door was unused because it had cobwebs hanging from the door but was otherwise "nice and clean," no evidence indicates he had reason to believe entering Huddy's gated and fenced backyard to knock on the back door would "produce a different result than knocking on the home's front door[.]" Pasour , 223 N.C.App. at 178, 741 S.E.2d at 325 ; see Gentile , 237 N.C.App. at 309, 766 S.E.2d at 353.
Even if the back door was the entrance primarily used by Huddy or regular visitors, an uninvited visitor would not necessarily acquire any "implied license" to also use that door. In cases where other jurisdictions have permitted an officer to knock at a back or side door, the door was easily visible to the public and not within any defined curtilage or fenced enclosure. See, e.g. , United States v. Shuck , 713 F.3d 563, 565 (10th Cir. 2013) (holding the officers reasonably approached the back door when a chain-link fence enclosed the front door, but not the back door); United States v. James , 40 F.3d 850, 862 (7th Cir. 1994), vacated on other grounds , 516 U.S. 1022, 116 S.Ct. 664, 133 L.Ed.2d 515 (1995), and modified, 79 F.3d 553 (7th Cir. 1996) ("The passage to the rear side door was not impeded by a gate or fence. Both the paved walkway and the rear side door were accessible to the general public and the rear *658 side door was commonly used for entering the duplex from the nearby alley.").
No gate or fence blocked access to Huddy's front door, but his back door was located within a gated and fenced-in backyard. After crossing *158 the yard, the back door could only be accessed by further opening a storm door and walking across a small porch. While the front door in this case may have been covered in cobwebs or not frequently used, a "reasonably respectful citizen" would not have taken this fact as an "implied license" to go to the back areas of the house, open the closed fence gate, cross the fenced backyard, open the storm door, and walk across the porch, just to knock upon the back door. See Jardines , 569 U.S. at ----, 133 S.Ct. at 1415, 185 L.Ed.2d at 502. However, the record demonstrates Deputy Smith followed this exact process to knock on Huddy's back door.
Deputy Smith's actions far exceeded the scope of any implied license to conduct a knock and talk at Huddy's home without a warrant. See Pasour , 223 N.C.App. at 178, 741 S.E.2d at 325 ("[w]here officers have no reason to believe that entering a homeowner's backyard will produce a different result than knocking on the home's front door, the Fourth Amendment is violated.").
Under de novo review, Deputy Smith's conduct, after failing to knock upon the front door of Huddy's home and with the absence of anything other than a car registered to another address parked with an open door in the driveway, cannot be justified as a "knock and talk" to excuse the requirement of a warrant. The trial court's conclusions of law 3, 4, 5, 7, and 8 to deny the motion to suppress are not supported by the evidence presented or the order's findings of fact. Huddy's motion to suppress should have been allowed under these facts. This Court properly rules error occurred in the denial of Defendant's motion to suppress.